IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

 *Plaintiffs*,

v.

ANTHEM, INC. and CIGNA CORP.,

 *Defendants*.

Case No. 1:16-cv-01493-JDB

## ANTHEM'S EXPLANATION OF ITS POSITIONS AS TO TIMING OF PROCEEDINGS AND WHETHER PROCEEDINGS SHOULD BE CONDUCTED JOINTLY WITH THOSE IN CASE 16-CV-1494

In compliance with this Court's Minute Order entered on July 29, 2016, Anthem hereby explains its positions as to (i) the timing of proceedings in this action and (ii) whether proceedings in this action should be conducted jointly with those in case 16-cv-1494, which is captioned as *United States, et al. v. Aetna Inc. and Humana Inc.* Anthem submits that the trial of this action should be set for a time that will allow resolution before the end of calendar year 2016, and Anthem further submits that this action should not be conducted jointly with the *Aetna/Humana* action, because the two actions are so different that there are no efficiencies — and only confusion — to be gained from conducting them jointly.

To provide this Court with background facts relevant to these issues, this submission is accompanied by the Declaration of Jared R. Danilson ("Danilson Decl.") and the Declaration of George L. Paul ("Paul Decl.").

## I.      TIMING OF PROCEEDINGS

The merger agreement between Anthem and Cigna, dated as of July 23, 2015 (the "Merger Agreement"), may be terminated by either party after January 31, 2017; that "Termination Date," however, may be extended to April 30, 2017 by either party if a "Regulatory Restraint" prevents an earlier closing.   Danilson Decl. ¶ 1, Ex. A (Merger Agreement, section 7.1(b)).   A "Regulatory Restraint" includes the absence of a required clearance by a state insurance regulator and, as explained below, Anthem and Cigna are currently awaiting certain such required clearances.   Danilson Decl. ¶ 1, Ex. A. (Merger Agreement, section 8.13).  Anthem intends to unilaterally extend the Termination Date to April 30, 2017, but cannot unilaterally extend it any further.   Anthem believes that the merger must close by April 30, 2017 or Cigna will declare that it is terminating the Merger Agreement the next day.  *See* Compl. ¶ 14 (alleging that "Anthem's acquisition of Cigna was contentious from the start;" "the insurers also fought publicly about which CEO would lead the combined company;" and "Anthem and Cigna have continued to quarrel over how they should integrate their two companies").  If the Merger Agreement terminates and Cigna has not willfully breached certain of its obligations, Cigna may be entitled to a break-up fee of $1.85 billion.  Danilson Decl. ¶ 1, Ex. A (Merger Agreement, section 7.3(e)).

To acquire Cigna (a holding company), Anthem requires approval from insurance regulators in 26 States.  Danilson Decl. ¶¶ 3, 9.  Anthem has secured approvals from regulators in 12 of those States.  Danilson Decl. ¶¶ 3, 11.  No State regulator has disapproved the merger, but 14 State regulators have not concluded their review process.  Danilson Decl. ¶ 3.  After the filing of this action, at least four State regulators — those in Colorado, Connecticut, Georgia and New Hampshire, all Plaintiffs here — have stated that they are suspending their review process,

in whole or in part, until this action concludes.  Danilson Decl. ¶¶ 4, 24, 33, 40, 46-47.  Other States will likely follow suit in suspending their review.  Danilson Decl. ¶ 55.

If this action concludes without an injunction, Anthem expects that it will need at least 120 days to secure the remaining approvals by State insurance regulators.  Danilson Decl. ¶¶ 5, 15.  This 120-day estimate is ambitious, in that it assumes not only great diligence by Anthem (which it will employ) but good-faith cooperation by State regulators.  Danilson Decl. ¶¶ 5, 15.  As a practical matter, then, Anthem's ability to close its acquisition of Cigna depends upon this action concluding (without an injunction) before the end of 2016, thereby leaving 120 days to obtain the remaining State regulatory approvals before the extended Termination Date of April 30, 2017.

Section 15 of the Clayton Act, 15 U.S.C. § 25, provides that, in an action to enjoin an acquisition under the Clayton Act, the district court "shall proceed, as soon as may be, to the hearing and determination of the case."  This Court, like other district courts around the country, has dutifully expedited injunctive actions under the Clayton Act in order to resolve them before the proposed acquisition terminates.  For example, in *Federal Trade Commission v. Arch Coal, Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004), this Court began trial 88 days after the filing of the complaint and issued its decision 35 days after the trial ended.  Anthem seeks similar expedition here.

Plaintiffs have already asserted that *Arch Coal* was not comparable in complexity to this action (ECF No. 16 at 2), but that assertion ignores that *Arch Coal* dealt with a whole host of complicated issues in an esoteric industry, and that this Court characterized that case as "complex."  329 F. Supp. 2d at 115.  And, while this present action is undoubtedly complex, Plaintiffs exaggerate its complexity by double-counting the number of alleged local markets and

suggesting that the manageability of a case is determined by such a simple metric.  In any event, sound case-management tools (such as focusing the trial on certain illustrative local markets) may be employed here to ensure orderly and fair case administration.

Moreover, the expedition in *Arch Coal* is in line with the expedition in other merger cases in this Court, including cases — such as the original *Staples/Office Depot* case — alleging numerous local markets.  *See FTC v. Staples*, *Inc.*, 970 F. Supp. 1066, 1070, 1073 (D.D.C. 1997) (noting, in case involving approximately 50 local markets, that hearing was held 40 days after complaint filed); *see also, e.g.*, Complaint and Trial Procedures Order, *United States v. U.S. Airways Grp Inc.*, *et al.*, No. 1:13-cv-01236-CKK (D.D.C. Aug. 13, 2014, Oct. 30, 2013), ECF Nos. 1, 128 (scheduling hearing 104 days after complaint filed alleging hundreds of "city pair" markets); *United States v. H&R Block, Inc.,* 833 F. Supp. 2d 36, 44-45 (D.D.C. 2011) (noting that hearing was scheduled 106 days after complaint filed); *FTC v. Libbey, Inc.*, No. 1:02-cv-00060-RBW (D.D.C. Jan. 29, 2002), ECF No. 18 (scheduling hearing 42 days after complaint filed); *United States v. SunGard Data Sys.*, 172 F. Supp. 2d 172, 179 (D.D.C. 2001) (noting that hearing was scheduled 17 days after complaint filed); *FTC v. H. J. Heinz Co.*, 116 F. Supp. 2d 190, 194 (D.D.C. 2000) (noting that hearing was scheduled 47 days after complaint filed); *FTC v. Swedish Match N. Am., Inc.*, 131 F. Supp. 2d 151, 151-155 (D.D.C. 2000) (noting that hearing was scheduled 74 days after complaint filed); *FTC v. Cardinal Health*, 12 F. Supp. 2d 34, 44 (D.D.C. 1998) (noting, in case involving multiple local city markets, that hearing was scheduled 93 days after complaint filed).

In these cases, and numerous others, this Court has recognized that judicial review of a proposed merger frequently necessitates expedition, even though doing so may result in unusual burdens being imposed upon the parties, counsel and the Court.  *See, e.g.*, *FTC v. Staples, Inc.*,

No. 15-2115 (EGS), 2016 U.S. Dist. LEXIS 64909, at *6 n.1 (D.D.C. May 10, 2016) (committing to ruling on the merits within 155 days of complaint "so that financing could be secured to hold [the] deal together"); *SunGard*, 172 F. Supp. 2d at 179 n.5 (conducting trial after two weeks of discovery because company being acquired would lose substantial value as a result of employee attrition if the future of the company remained undecided following payment of annual employee bonuses); *FTC v. Occidental Petroleum Corp.*, No. 86-900, 1986 U.S. Dist. LEXIS 26138, at *26 (D.D.C. Apr. 29, 1986) (expediting preliminary injunction hearing to within 30 days of complaint to meet the contractual "walk away" deadline and to prevent the erosion of relationships with the acquired company's personnel, customers and suppliers). *See generally* John D. Bates, *Customer Testimony of Anticompetitive Effects in Merger Litigation*, 2005 Colum. Bus. L. Rev. 279, 289 (2005) ("Antitrust cases present their own unique challenges, and merger cases . . . often require a judicial decision in a short period of time, particularly if the government seeks to prevent an imminent merger or acquisition.").

The Plaintiffs cannot fault Anthem for the current logistical predicament; in fact, it is largely of the Plaintiffs' own making. Anthem and Cigna announced their transaction on July 24, 2015 — over a year ago — and spoke to the Antitrust Division that same day. Paul Decl. ¶ 3. On July 29, 2015, the Antitrust Division issued a Voluntary Request for Information. Paul Decl. ¶ 4. Anthem provided information to the Division in response to the Voluntary Request between July 2015 and September 2015 (Paul Decl. ¶ 4). Anthem and Cigna both filed their Hart-Scott-Rodino ("HSR") Act pre-merger notification submissions on August 27, 2015 and, on September 28, 2015, received the Antitrust Division's Second Requests. Paul Decl. ¶¶ 5, 8. Anthem certified substantial compliance with its Second Request on February 9, 2016, and the Antitrust Division has asserted that the date of Cigna's substantial compliance was March 4,

2016.  Paul Decl. ¶ 11.  Under the HSR Act, the Antitrust Division has 30 days from the date of substantial compliance to complete its investigation and review.  Paul Decl. ¶ 11.  But on October 16, 2015, the Antitrust Division requested an agreement from the parties providing additional time to review the transaction and through a series of extensions extended the time for the Antitrust Division's review until July 22, 2016.  Paul Decl. ¶ 9.  Thus, the Antitrust Division filed its Complaint challenging the Anthem-Cigna transaction 139 days after the date on which the Antitrust Division asserted that both parties had certified substantial compliance with the Second Requests.

More than twelve months of one-sided *ex parte* discovery has occurred since the Antitrust Division began its investigation.  In that time Anthem itself (i) produced approximately 4 million documents from 112 Anthem custodians, (ii) produced 22 Anthem witnesses for deposition, (iii) provided 22 substantive white paper submissions, (iv) provided extensive outside economist involvement and analysis, and (v) produced at least 3 terabytes of data.  Paul Decl. ¶¶ 7, 11-14.  The Antitrust Division also obtained similar evidence from at least Cigna and apparently also other industry participants during this time.  Paul Decl. ¶ 11.  The Antitrust Division had its own economists involved in the matter, who posed numerous questions to Anthem and its economists.  Paul Decl. ¶ 14.  The Plaintiffs can be reasonably expected to try a case on the merits after such lengthy discovery; the record available to the Plaintiffs already surpasses the record in most civil cases, even the most complex ones, and the Plaintiffs will have still more time for discovery in the remaining months leading up to trial.  Under these circumstances, an expedited trial will not prejudice the Plaintiffs, who should be ready for trial already.

Expedition is important to Anthem and Cigna, as both companies await a final determination of whether the merger will proceed. Corporate plans are necessarily impeded by the uncertainty.

Expedition also advances the interests of non-parties — such as customers, shareholders, investors, employees, suppliers and others — who for over a year now have been uncertain about whether Anthem will be acquiring Cigna. Most importantly, expedition is crucial for customers who could be enjoying the benefits of efficiencies promised by Anthem's acquisition of Cigna. For example, with its proposed acquisition of Cigna, Anthem will extend to Cigna customers the existing low prices that Anthem's customers receive from hospitals and doctors (Compl. ¶¶ 45, 74) (and, for those providers where Cigna's existing rates are lower, Anthem's customers would receive the lower rates that Cigna's customers receive today). Notably, the Plaintiffs' Complaint affirmatively alleges that the combined company will obtain lower rates for its customers, but condemns that prospect with the unusual charge of monopsony. Compl. ¶ 67. These lower rates translate into billions of dollars in savings annually. Because the parties' self-insured customers pay these hospital and doctor charges directly, the combined company will not retain the savings; the customers are the direct and automatic beneficiary. This automatic flow-through of billions in savings to customers distinguishes this case from other merger cases, where the likelihood of merger-related savings being passed on to customers was much less clear. The acquisition also will address the urgent need to fix healthcare access for uninsured individuals by expanding the merged company into new exchanges in nine states where neither Anthem nor Cigna currently offers individuals on-exchange coverage. The Plaintiffs repeatedly emphasize the size of Anthem's acquisition as the basis for which "more time is needed in this case." *See* ECF No. 16 at 2. But the size of the merger helps generate the enormous efficiencies that flow from it,

making expedition crucial.   Further delay in consummation of the acquisition will deprive customers, and others, of those efficiencies.

The scheduling order that Anthem proposes would set trial for approximately 90 days after the Complaint was filed, and seeks resolution of this action by the end of the year, or 163 days after the Complaint was filed.   Paul Decl. ¶ 15, Ex. 1 (Anthem's Proposed Scheduling and Case Management Order).   Anthem sent this proposed scheduling order to the Plaintiffs on July 27, 2016 in an attempt to engage Plaintiffs in a productive discussion of scheduling.   Paul Decl. ¶ 15.   The Plaintiffs did not make their own proposal until earlier today and it is a cynical proposal apparently calling for trial in late February or even later.   Paul Decl. ¶ 15.   Such a schedule would kill the proposed transaction.   Anthem's proposed scheduling order provides for approximately 6 weeks of fact discovery, 8 weeks of expert discovery and a 15-day trial, commencing on October 17, 2016, or as soon thereafter as the Court's schedule may allow.   Paul Decl. ¶ 15, Ex. 1.   Because the Plaintiffs have conducted the bulk of their depositions, document collection and expert interviews prior to filing their Complaint, this amount of time is more than fair.

Plaintiffs may point to other merger cases, like *United States v. AT&T, T-Mobile USA, Inc., and Deutsche Telekom AG*, No. 11-cv-01560 (D.D.C., filed Aug. 31, 2011), where the timeline from complaint to hearing was substantially longer; but such cases are easily distinguished.   In many cases with longer timelines, like *AT&T*, neither party sought an expedited hearing, or demonstrated a need for one.   *See, e.g.*, Stipulated Scheduling and Case Management Order, *AT&T*, No. 11-cv-01560 (D.D.C. Sept. 23, 2011), ECF No. 33.   In fact, as *AT&T* exemplifies, the longer a hearing is delayed, the greater the likelihood that a merger is abandoned.   *Id.* (scheduling trial 166 days after complaint was filed, but merger was abandoned

on or around day 111); *see also United States v. Compuware Corp. & Viasoft, Inc.*, No. 99-cv-02884 (D.D.C. 1999) (scheduling trial 157 days after complaint was filed, but merger was abandoned on or around day 87); *United States v. Primestar Inc.*, No. 98-cv-01193 (D.D.C. 1998) (scheduling trial 265 days after complaint was filed, but merger was abandoned on or around day 181); *United States v. Lockheed Martin Corp.,* No. 98-cv-00731 (D.D.C. 1998) (scheduling trial 169 days after complaint was filed, but merger was abandoned on or around day 123). When a merger is abandoned due to delay, potential efficiencies may be lost forever.

## II.     COORDINATION WITH CASE 16-CV-1494 (*AETNA/HUMANA*)

This action and the *Aetna/Humana* action both seek to enjoin mergers in the health insurance industry, but they otherwise have little in common. Most fundamentally, this action deals predominantly with commercial health insurance (and not at all with government-based Medicare Advantage); in contrast, the *Aetna/Humana* action deals predominantly with Medicare Advantage (and not at all with commercial health insurance). There are no material efficiencies to be gained — and likely only confusion — from conducting the proceedings jointly.

At the press conference announcing the filing of the two actions, U.S. Attorney General Loretta Lynch acknowledged that this action relates to commercial health insurance and that the *Aetna/Humana* action relates to Medicare Advantage, ultimately stating: "They were separate investigations and are separate cases." *DOJ & State AGs Sue to Block Anthem's Acquisition of Cigna, Aetna's Acquisition of Humana*, YouTube (July 21, 2016), https://youtu.be/AFjGbzIxP7k. Principal Deputy Associate Attorney General William Baer (who was Assistant Attorney General in charge of the Antitrust Division when the investigations began) acknowledged the same and later added: "[W]e're actually filing two separate lawsuits this morning challenging these transactions separately. They involve different products,

different markets and so, while we are filing both cases in the district court here in D.C., we will be preparing to go to trial separately in the two cases."   *Lawsuits to Block Health Insurer Mergers*, N.Y. Times (July 21, 2016), http://nyti.ms/2abGbBT.

The complaints bear out these descriptions of two distinct and fundamentally different actions.  The Complaint in this action deals with commercial health insurance beginning with its very first paragraph.   Compl. ¶ 1.   The Complaint alleges that the merger likely would substantially lessen competition in the product markets for the sale of commercial health insurance to "national accounts" and to "large group employers" in specified geographic markets.  Compl. ¶ 8.  As observed above, the Complaint even alleges that the merger of Anthem and Cigna would create monopsony power in the "purchase of healthcare services by commercial health insurers," driving down reimbursement rates.  Compl. ¶ 8.  (The Complaint condemns the driving down of reimbursement rates as harmful to doctors and hospitals, even though the lower reimbursement rates have already been agreed to by doctors and hospitals and will automatically lead to lower health insurance costs for virtually all customers of the combined firm.   Anthem is prepared to demonstrate that this driving down of rates does not constitute monopsony purchasing.)

In contrast, the *Aetna/Humana* complaint focuses, from its opening paragraphs, expressly on Medicare Advantage.  The complaint alleges that the sale of Medicare Advantage is a market to itself, distinct from the sale of traditional Medicare, let alone the sale of commercial health insurance.  Aetna Compl. ¶¶ 23-29.  The complaint alleges that the merger of Aetna and Humana likely would substantially lessen competition in the sale of Medicare Advantage.   Aetna Compl. ¶¶ 19-41.

The sole commonality between the allegations of the two complaints is that each contains allegations of competitive harm in the alleged product market for the sale of insurance on public exchanges under the Affordable Care Act (a/k/a Obamacare).  Compl. ¶¶ 51-63; Aetna Compl. ¶¶ 42-52.  But, putting aside that the allegations relating to public exchanges are secondary in both complaints, even this commonality is immaterial because there is no overlap in the alleged geographic markets to be affected.  Compare Compl. ¶¶ 55, 57, 59 (12 counties in CO and 10 counties in MO); with Aetna Compl. at ¶¶ 47-48 (3 counties in FL, 9 counties in GA, and 5 different counties in MO).

As the Supreme Court observed in *United States v. General Dynamics Corp.*, 415 U.S. 486 (1974), the analysis under Section 7 of the Clayton Act focuses on the particular market at issue:  "only a further examination of the particular market — its structure, history, and probable future — can provide the appropriate setting for judging the probable anticompetitive effects of the merger."  *Id.* at 498 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 322 n.38 (1962)); *United States v. Baker Hughes, Inc.*, 908 F.2d 981, 985 n.6 (D.C. Cir. 1990) (quoting *Brown Shoe* for the same proposition).  Given that this action and the *Aetna/Humana* action relate to different markets — without any overlap — the two actions will require the analysis of different facts in the examination of competitive effects.  The two actions will deal with different competitors, different competitive circumstances, different entry scenarios and different potential efficiencies.  Consequently, discovery, trial witnesses, and documentary evidence will focus on very different matters in the two actions.

Rule 42(a) of the Federal Rules of Civil Procedure gives district courts discretion to consolidate actions "[i]f actions before the court involve a common question of law or fact."  Consolidation is warranted when it "would promote convenience and judicial economy."  *Singh*

*v. Carter*, No. 16-399 (BAH), 2016 WL 2626844, at *4, *10 (D.D.C. May 6, 2016) (denying consolidation where, *inter alia*, there were factual distinctions among plaintiffs and differing allegations in cases sought to be consolidated) (internal quotations and citations omitted); *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002) (rejecting argument that "consolidation would promote both judicial efficiency and the public interest" where defendants were "loosely connected . . . under the bureaucratic umbrella of the Department of the Treasury," and "allegations of discrimination [were] different").  In order to determine if consolidation is appropriate, "district courts weigh the risk of prejudice and confusion wrought by consolidation against . . . , the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated."  *Singh*, 2016 WL 2626844, at *4, *10.

Here, consolidation — to any degree — is not warranted.  The distinct focus of each action, one on commercial health insurance and the other on Medicare Advantage, means that there will be few, if any, common questions of fact.  While both actions will of course deal with legal issues under Section 7, that law is well established, and the real judicial work will be determining the facts and applying that law to them.  Far from advancing convenience or economy, consolidation seems more likely to create inefficiency and confusion, which threaten prejudice to all parties.  Furthermore, by linking the cases together, consolidation may prevent either action from advancing more quickly than the other; both actions may proceed only as fast as the slower of the two.

Different parties in the actions to be consolidated also weighs against consolidation.  *See, e.g.*, *Kalonder v. Bodman*, 241 F.R.D. 6, 10-11 (D.D.C. 2006) (finding that "[a]lthough there [were] some common questions of fact and law, the common questions [were] not sufficiently

substantial to compel consolidation" when, *inter alia*, defendants differed and one group of defendants objected to consolidation); *see also Singh*, 2016 WL 2626844, at *9-10 (holding that consolidation was not warranted in part due to "factual distinctions between the plaintiff[s]" in each case, even though claims were asserted against the same defendants).   Obviously, the defendants in each action here are different, with no overlap.   There is some overlap among the States that are Plaintiffs, but that commonality appears to be mere fortuity, as the actions relate to wholly different alleged geographic markets.   The Department of Justice is a plaintiff in both actions, but — consistent with the comments at the Department's press conference — the two actions result from different investigations and are being handled by different teams of line prosecutors.   The actions were filed the same day, but that commonality seems to result from the public-relations or political strategy of Department of Justice officials.

Given the focus on "convenience and judicial economy," consolidation "is not appropriate when the parties at issue . . . and the allegations in each case are different" or when the actions are not "likely to involve substantially the same witnesses and arise from the same series of events or facts."   *Singh*, 2016 WL 2626844, at *4 (internal quotations and citations omitted); *cf. In re Ampicillin Antitrust Litig.*, 88 F.R.D. 174, 177-78 (D.D.C. 1980) (finding consolidation under Rule 42(b) improper when "the interest of judicial economy and the avoidance of confusion and prejudice w[ould] not be served by consolidation" when differing defendants would be prejudiced and when "respective theories underlying the . . . Sherman Act claims [were] quite different and w[ould] undoubtedly call for different proof").   Here, the two cases involve different mergers, different facts, different alleged antitrust markets, different witnesses, different entry scenarios, different merger efficiencies, and different specific legal issues.   Consolidation would result in confusion, not efficiency, and will not save judicial

resources because the evidence to be presented in both cases by all parties is entirely different. *Singh*, 2016 WL 2626844, at \*10 (finding that due to "factual distinctions between [plaintiffs]," and "differing allegations," consolidation would "aside from creating possible confusion, not simplify case management or conserve judicial resources").

Especially in light of Rule 45(d)(1)'s admonition "to avoid imposing undue burden or expense" on non-parties, any responsible consideration of consolidation should include consideration of the interests of non-parties but, here, consolidation is not likely to reduce the burden or expense on non-parties.  While some non-parties may receive subpoenas from parties in both this action and in the *Aetna/Humana* action, those subpoenas will be addressing very different subject matter, because the two actions relate to very different subject matter.  Indeed, it is likely that any such common subpoenas will be addressed to different business units and to different individuals.

This action and the *Aetna/Humana* action are so fundamentally different that the Plaintiffs probably erred in designating *Aetna/Humana* action as "related" to this action, which was filed first and randomly assigned.  Under Local Rule 40.5 cases are "related" only if "they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent."  None of these conditions is satisfied here.  *See, e.g.*, *Keepseagle v. Glickman*, 194 F.R.D. 1, 3 (D.D.C. 2000) (holding that "common aspects [were] not sufficient . . . to justify waiving the normal judicial policy of random assignment of cases" even though both sets of plaintiffs "complain[ed] of similar discrimination at the hands of the Department of Agriculture"); *Dale v. Exec. Office of the President,* 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (holding that "[a]ny common issues of fact [were] minimal and completely insufficient" to overcome presumption of random assignment

even though cases both involved allegations that the White House wrongfully obtained F.B.I. files and both the cases involved the denial of a Privacy Act request); *Sculimbrene v. Reno*, No. 99-02010 (RCL), 2000 U.S. Dist. LEXIS 10503, at *3 (D.D.C. Jan. 24, 2000) (finding that cases involving alleged improper transfer of FBI files were not related, even though plaintiff in one case was "clearly an important witness" in the other case: "[w]hile it is true that there might be some judicial efficiency if the undersigned judge handled this case, Local Rule 40.5 is intended to constitute an *exception* to the normal judicial policy of random assignment of cases, and it does not contemplate the kind of wide-ranging exception [for judicial efficiency reasons] plaintiff seeks").  Accordingly, not only is consolidation unwarranted, but this Court may wish to consider sending the *Aetna/Humana* action back to "the wheel" for random assignment.

## CONCLUSION

For the foregoing reasons, Anthem respectfully requests that the Court set the trial of this action for a time that will allow this action to be resolved before the end of calendar year 2016, and Anthem further requests that this action not be conducted jointly with the *Aetna/Humana* action.

Dated:  August 2, 2016
       Washington, D.C.

Respectfully submitted,

 /s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
J. Mark Gidley (D.C. Bar No. 417280)
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC  20005
Tel:  +1 202 626 3600
Fax:  +1 202 639 9355
ccurran@whitecase.com
mgidley@whitecase.com

*Counsel for Anthem, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2016, a true and correct copy of Anthem's Explanation Of Its Positions As To Timing Of Proceedings And Whether Proceedings Should Be Conducted Jointly With Those In Case 16-CV-1494 was served via the Court's CM/ECF system or via first class mail, pursuant to Rule 5.4(d) of the Local Civil Rules and Rule 5(b) of the Federal Rules of Civil Procedure, upon the following:

Peter J. Mucchetti
Scott I. Fitzgerald
Jon B. Jacobs
U.S. Department Of Justice
Antitrust Division, Litigation I Section
450 Fifth Street, NW, Suite 4100
Washington, DC  20530
Telephone:  +1 202 353 4211
Facsimile:  +1 202 307 5802
peter.j.mucchetti@usdoj.gov
scott.fitzgerald@usdoj.gov
jon.jacobs@usdoj.gov

*Counsel for Plaintiff United States of America*

Paula Lauren Gibson
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California  90013
Telephone: +1 213 897 0014
Facsimile: +1 213 897 2801
paula.gibson@doj.ca.gov

*Counsel for Plaintiff State of California*

Devin Laiho
Colorado Department of Law
Consumer Protection Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado  80203
Telephone: +1 720 508 6219
Facsimile: +1 720 508 6040
devin.laiho@coag.gov

*Counsel for Plaintiff State of Colorado*

Rachel O. Davis
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, Connecticut  06141-0120
Telephone: +1 860 808 5040
Facsimile: +1 860 808 5033
rachel.davis@ct.gov

*Counsel for Plaintiff State of Connecticut*

Daniel Walsh
Office of the Attorney General
20 Capitol Square, SW
Atlanta, Georgia  30334-1300
Telephone: +1 404 657 2204
Facsimile: +1 404 656 0677
dwalsh@law.ga.gov

*Counsel for Plaintiff State of Georgia*

Christina M. Moylan
Office of Maine Attorney General
Consumer Protection Division
6 State House Station
Augusta, Maine  04333-0006
Telephone: +1 207 626 8800
Facsimile: +1 207 624 7730
christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

Ann Rice
New Hampshire Department of Justice
33 Capitol Street
Concord, New Hampshire  03301
Telephone: +1 603 271 1202
Facsimile: +1 603 271 2110
ann.rice@doj.nh.gov

*Counsel for Plaintiff State of New Hampshire*

Catherine A. Jackson
Assistant Attorney General
441 Fourth Street, N.W., Suite 630-South
Washington, DC  20001
Telephone: +1 202 442 9864
Facsimile: +1 202 741 0655
catherine.jackson@dc.gov

*Counsel for Plaintiff District of Colombia*

Layne M. Lindebak
Iowa Department of Justice
Special Litigation Division
1305 East Walnut Street, 2nd Floor
Des Moines, Iowa  50319
Telephone: +1 515 281 7054
Facsimile: +1 515 281 4902
layne.lindebak@iowa.gov

*Counsel for Plaintiff State of Iowa*

Ellen S. Cooper
Assistant Attorney General
Chief, Antitrust Division
200 Saint Paul Place
Baltimore, Maryland  21202
Telephone: +1 410 576 6470
Facsimile: +1 410 576 7830
ecooper@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

Irina C. Rodriguez
Office of the New York State Attorney General
Antitrust Bureau
120 Broadway
New York, New York  10271-0332
Telephone: +1 212 416 8288
Facsimile: +1 212 416 6015
irina.rodriguez@ag.ny.gov

*Counsel for Plaintiff State of New York*

Victor J. Domen, Jr.
Tennessee Attorney General's Office
500 Charlotte Avenue
Nashville, Tennessee  37202
Telephone: +1 615 253 3327
Facsimile: +1 615 532 6951
vic.domen@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

Tyler T. Henry
Assistant Attorney General
Antitrust Unit
Consumer Protection Section
202 North 9th Street
Richmond, Virginia 23219
Telephone: +1 804 692 0485
Facsimile: +1 804 786 0122
thenry@oag.state.va.us

*Counsel for Plaintiff Commonwealth of
Virginia*

Charles F. Rule
Andrew J. Forman
Daniel J. Howley
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, NW
Washington, DC  20001
Telephone: +1 202 862 2200
Facsimile: +1 202 862 2400
rick.rule@cwt.com
andrew.forman@cwt.com
daniel.howley@cwt.com

*Counsel for Cigna Corp.*

Dated:  August 2, 2016
        Washington, D.C.

Respectfully submitted,

 /s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC  20005
Tel:  +1 202 626 3600
Fax:  +1 202 639 9355
mleddicotte@whitecase.com

*Counsel for Anthem, Inc.*