# Exhibit G

# MITCHELL ‖ WILLIAMS

Julie M. Pomerantz  
E-mail: jpomerantz@mwlaw.com  
Telephone: 512-480-5100  

500 W. 5th Street, Suite 1150  
Austin, TX 78701  
Fax: 512-322-0301  

### DECLARATION OF JULIE MARCH POMERANTZ

I, Julie March Pomerantz, declare as follows:

1. I am a member at the law firm of Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C. My firm is located in Austin, Texas and is a full service law firm with a large practice that focuses primarily on insurance regulatory and related corporate work. I have practiced insurance regulatory work for over twenty (20) years, including two and a half years as a regulator at the Georgia Office of Insurance and Fire Safety Commissioner (the "Georgia Department"). During this time, I have been involved in many insurance regulatory approval procedures, and I have worked with the Georgia Department many times over the years, both as a regulator and as outside counsel representing clients.

2. Since early August, 2015, I have been working on behalf of Anthem in connection with Anthem's pending merger with Cigna to help Anthem secure approval of the transaction from the Georgia Department.

3. Like most states, in Georgia, an acquiring company must file a change of control statement, known as a Form A, with the Georgia Department. The Georgia Commissioner must approve the Form A filing before the transaction can be completed. During their Form A review, the Georgia Department will evaluate the transaction, including conducting an analysis of whether the insurer, post transaction, would be able to satisfy the requirements for a license to write the lines of insurance business contemplated; whether there will be any financial issue that will jeopardize the financial stability of the insurer or prejudice the interest of its policyholders; any plans or proposals which the acquiring party has to liquidate the insurer, sell the assets or consolidate or

August 1, 2016
Page 2

    merge it with another entity or to make any other material changes in the business plan or corporate structure or management that are unfair to policyholders or the public; the competence, experience, and integrity of those that will control the insurer; and whether the transaction would be hazardous or prejudicial to the insurance buying public.. In conducting its analysis, the Georgia Department will also look at whether the contemplated transaction substantially lessens competition in any line of insurance in Georgia or tends to create a monopoly therein. The Georgia Commissioner is required to conduct this competition analysis and grant approval, regardless of the outcome of such analysis, if the acquisition will yield substantial economies of scale or economies in resource utilization that cannot otherwise be feasibly achieved where the public benefits arising therefrom exceed the benefits of more competition. The Georgia Commissioner is also required to approve in the instance where the acquisition will substantially increase the availability of insurance, and the public benefits of such increase exceed the public benefits which arise from not lessening competition. This review process is governed by O.C.G.A. §§ 33-13-3 and 33-13-3.1.

4. Georgia state law also requires a public hearing, preceded by no less than 7 days' notice to the public and 20 days' notice to the person filing the Form A, prior to state regulatory approval. O.C.G.A. § 33-13-3 (d)(2). In this case, given the politics and public interest in the merger, the Georgia Department is providing the public 30 days' notice of the hearing in order to provide all interested parties the opportunity to participate. Pursuant to O.C.G.A. § 33-13-3(d)(2), any public hearing must be held within 30 days after the Form A statement is "filed." The Georgia Department interprets "filed" to mean not only that the Form A is filed but also that it is deemed complete by the Georgia Department. The Georgia Commissioner shall make a determination "within the 60 day period preceding the effective date of the proposed transaction." O.C.G.A. §

    33-13-3(d)(2). In my experience, the Georgia Department generally takes up to 30 days after the hearing to issue an order related to the transaction. In this case, the expectation is that it could be longer than 30 days post hearing to issue an order.

5. On September 3, 2015, my firm, on behalf of Anthem, submitted the Form A regarding the Anthem/Cigna merger with the Georgia Department. This was followed up with the filing of a detailed competitive impact statement, or a Form E, on December 7, 2015.

6. Over the course of the last 9 months, I have had regular discussions with the Georgia Department and its outside consultants in connection with Anthem's Form A filing in Georgia. Those discussions included meetings, telephone calls, and correspondence related to the filing, the transaction, the competition evaluation, and the hearing process.

7. The Georgia Department has stated that it will provide 30 days' notice for the Anthem/Cigna hearing, given the complex and political nature of the transaction and in order to provide maximum notice for all interested parties that want to participate.

8. The Aetna/Humana hearing was scheduled to take place in Georgia on Tuesday, July 26, 2016. As a result of the Department of Justice Antitrust Division's action to file its antitrust challenge against that merger on July 21, 2016, the Georgia Department postponed the July 26, 2016 hearing. This information is posted on the Georgia Department website at https://www.oci.ga.gov/.

9. In my experience both as a regulator at the Georgia Department and as outside counsel working with the Georgia Department, the Georgia Department suspended its review and approval of a Form A, because of the federal antitrust lawsuit. This is mostly likely because one of the

August 1, 2016
Page 4

requirements for Georgia Department approval is that the transaction not substantially lessen competition in any line of insurance in Georgia.

10. I have spoken with the Georgia Department about the Department of Justice investigation and review of the merger. The Georgia Department warned that they would not likely go forward with their Form A review and approval of the transaction in the event that the Department of Justice filed a lawsuit to enjoin the merger. At this point, the Georgia Department has not indicated that it will take any further steps until the Department of Justice litigation is complete.

11. The Anthem/Cigna insurance hearing in Georgia was tentatively to be scheduled for later in the month of August, 2016. That will not occur in light of the Department of Justice litigation. My understanding from my discussions with the Georgia Department and its outside counsel and consultants is that they are currently unwilling to notice the public hearing until the federal case is resolved.

12. In addition, the Georgia Department has told me they are considering suspending their outside economist's review of the transaction pending the outcome of the federal lawsuit.

13. I have urged the Georgia Department and its outside consultants to continue their review of the Anthem/Cigna merger simultaneously with any federal antitrust review.

14. Based on the foregoing and my experience, I would anticipate the Georgia public hearing will not occur before 60 days following a decision in the federal antitrust lawsuit. Assuming the Georgia Commissioner renders a decision within 30 days of the public hearing, it is highly unlikely we would receive an ultimate decision prior to 90 days following judicial resolution of the federal action. It is more likely approval from the Georgia Department could take longer than 90 days,

August 1, 2016
Page 5

but with considerable effort and diligence, I believe we can obtain approval of the merger within 120 days following any federal court decision.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 1, 2016

Sincerely,

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.

By

Julie M. Pomerantz

JMP
Enclosures