**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA, et al.,

*Plaintiffs*,

v.

ANTHEM, INC. and CIGNA CORP.,

*Defendants*.

Case No. 1:16-cv-01493 (JDB)

UNITED STATES OF AMERICA, et al.,

*Plaintiffs*,

v.

AETNA INC. and HUMANA INC.,

*Defendants*.

Case No. 1:16-cv-1494 (JDB)

**JOINT STATEMENT OF PLAINTIFFS' POSITION**
**ON THE SCOPE AND TIMING OF PROCEEDINGS**

The United States and the co-plaintiff States submit this combined statement of their position on the appropriate timing of proceedings in these two actions, in accordance with this Court's Minute Order of July 29, 2016. Plaintiffs in both cases agree that the most efficient process for achieving a speedy resolution of these matters would be for the Court to manage the pretrial litigation in these actions jointly. Among other common issues, these cases likely will involve discovery of many of the same third parties and present similar questions on the scope and timing of discovery. But the two actions should be tried separately. They challenge different proposed mergers. And with the exception of one product (the sale of commercial health

insurance to individuals) that is at issue in both matters, the trials will focus on different markets and involve different witnesses and defenses.

The scope of each of these matters is enormous. The action challenging Aetna's proposed $37 billion acquisition of Humana involves two products and 381 relevant markets. The action challenging Anthem's proposed $54 billion acquisition of Cigna involves four products and 94 relevant markets, including a national market. These cases challenge the largest mergers ever proposed in the $3 trillion health-insurance industry, and threaten harm to millions of consumers across the country. Given what is at stake, this Court should allow both sides a reasonable opportunity to develop the relevant evidence in discovery and to present that evidence at trial.

Like Defendants, Plaintiffs want to move these cases to trial expeditiously. But Plaintiffs object to Defendants' attempts to rush based on self-imposed "option dates" in their merger agreements. On December 31, 2016, Humana has an option to walk away from its merger agreement and collect a $1 billion break-up fee from Aetna—an incentive that Aetna offered to Humana because of the antitrust risk raised by their transaction. Similarly, on April 30, 2017, Cigna has an option to walk away from its merger agreement and collect a $1.8 billion break-up fee from Anthem. Defendants fixed these option dates themselves and they can alter them with the stroke of pen.

On issues of timing, Defendants' actions speak louder than their words. Defendants propose less time for the entire pretrial schedule in each case than it took the fastest of them to produce documents during the pre-complaint investigation. Those document productions alone spanned over four to five months (135 to 169 days). That is the pace Defendants established when timing was in their control; now they seek to force Plaintiffs to conduct not only document discovery, but all depositions and data work, all expert discovery, and all pretrial processes in

less than that time. Defendants' proposal to unreasonably expedite these important cases creates the risk that they will be decided on less than an appropriate record—and is contrary to the Court of Appeals' direction that in merger cases the district court should take "whatever time it need[s]" to fully consider the evidence. *FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1041 (D.C. Cir. 2008).

Plaintiffs propose a responsible schedule in each case that would afford sufficient time to develop a record on which this Court can base its decisions. Plaintiffs propose a trial-ready date for both matters of February 17, 2017, with consecutive trials starting as soon thereafter as permitted by the Court's schedule. Setting a single trial-ready date now gives the Court flexibility to decide at a later date which trial should go first, depending on how the issues have narrowed (or broadened) during the course of pretrial litigation. This schedule, while still ambitious for two cases of this magnitude, is both workable and justified.

## I. PLAINTIFFS' PROPOSED SCHEDULE IS REASONABLE

### A. Plaintiffs recommend a fast-paced, but realistic, joint pretrial schedule.

By their nature, antitrust cases involve complex legal, factual, and economic questions. Numerous issues likely will be before the Court, including the definition of the relevant product and geographic markets, the likelihood of competitive harm in those markets, and the assessment of any proposed remedy and alleged merger-specific efficiencies that Defendants may assert are relevant. Plaintiffs need time to conduct appropriate discovery and develop admissible evidence on each of these issues, including party, third-party, and expert discovery.

Plaintiffs are prepared to move quickly to be trial-ready in both cases by February 17. Plaintiffs' proposed schedule allows for four months of fact discovery, one month of expert discovery, and one month for pretrial processes. Proceeding any faster would require a significant narrowing of the issues in dispute. Indeed, in the twelve days since filing the

Complaints, while Plaintiffs have been working to move these cases expeditiously, conversations with Defendants have revealed numerous issues that will take to resolve. In Aetna–Humana, Plaintiffs conferred with Defendants less than a week after the Complaint was filed. Plaintiffs asked several questions to determine the issues to be litigated at trial, and thus the amount of time needed for discovery—for example, whether Defendants will contest certain issues such as market definition and whether they intend to propose a remedy.[1] In Anthem–Cigna, Plaintiffs initiated a discussion about scheduling the day after the Complaint was filed and asked similar questions.[2] A Rule 26(f) conference in Anthem–Cigna is scheduled for this Friday, August 5, to begin resolving these issues.

In both cases, Plaintiffs have been preparing to produce their non-privileged investigative materials—including relevant third-party communications and documents—assuming that Defendants are amenable to a mutual exchange of such materials. Defendants, however, have not yet agreed to such an exchange. Further, any disclosures can begin only after a protective order is entered and third parties have an opportunity to review it and request any additional protection. Plaintiffs sent draft protective orders to Defendants in both actions on July 27 and the parties have exchanged subsequent drafts, but more time is needed to address the areas that remain in dispute. In addition, because of the massive amount of documents and data collected by Plaintiffs during the investigation, the United States has suggested that the four Defendants exchange materials with each other, which would greatly expedite the process. Despite their expressions of urgency, one Defendant (Aetna) has rejected this suggestion and the other three have yet to respond.

---

[1] Defendants were not prepared to respond to those questions and have not answered them to date.

[2] Anthem responded that it likely will contest all of the relevant markets alleged in the Complaint. To date, Anthem has not ruled out the possibility that it will offer a proposed remedy.

**B. Plaintiffs' proposed schedule is consistent with common practice for trials on the merits in merger cases.**

Plaintiffs' proposed schedule—which is further detailed in the Appendix—is consistent with recent merger litigation involving a trial on the merits in this and other districts. The table below shows the scheduled time to trial in merger cases brought by the United States Department of Justice over the last ten years:

| Case Name | Complaint Filed Date | Scheduled Time to Trial |
|---|---:|---:|
| AB Electrolux (D.D.C) | July 1, 2015 | 124 days |
| US Airways (D.D.C.) | August 13, 2013 | 104 days |
| Bazaarvoice (N.D. Cal.) | Jan. 10, 2013 | 243 days |
| AT&T (D.D.C.) | Aug. 31, 2011 | 166 days |
| H&R Block (D.D.C.) | May 23, 2011 | 106 days |
| Dean Foods (E.D. Wisc.) | Jan. 22, 2010 | 545 days |
| Microsemi Corp. (E.D. Va.) | Dec. 18, 2008 | 621 days |
| JBS (N.D. Ill.) | Oct. 20, 2008 | 214 days |

When judged against these benchmarks, and taking into consideration the size and complexity of these actions, Plaintiffs' proposed schedule of 211 days from the filing of the two Complaints to the final pretrial conference is sensible and appropriate. For example, like in Anthem–Cigna, the complaint in *United States v. AT&T Inc. et al.*, No. 11-cv-01560 (D.D.C., filed Aug. 31, 2011), alleged harm in a national market and in over 90 different local markets across the country. In that case, Judge Huvelle scheduled trial for 166 days after the filing of the complaint. But even more time is needed here because these cases are larger and more complex

than *AT&T*. Likewise, the interim deadlines in Plaintiffs' proposed schedule are consistent with schedules in recent merger actions.[3]

Defendant Anthem points to this Court's preliminary injunction hearing in *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004), which began 88 days after the FTC filed its complaint, as support for compressing the time to trial in this litigation. But neither of these cases is like *Arch Coal.*

First, preliminary injunction proceedings under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), are inherently different than actions involving a trial on the merits because "the district court's task is not 'to determine whether the antitrust laws have been or are about to be violated. That adjudicatory function is vested in the FTC in the first instance.'" *Whole Foods*, 548 F.3d at 1042 (Tatel, J., concurring) (quoting *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001)). As this Court observed, in preliminary injunction hearings, "[t]he FTC 'is not required to prove, nor is the court required to find, that the proposed merger would in fact violate Section 7 of the Clayton Act.'" *Arch Coal*, 329 F. Supp. 2d at 115-16 (quoting *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1070 (D.D.C. 1997)).[4] Here, that is exactly the task faced by Plaintiffs and the Court.

---

[3] *See, e.g.*, Case Mgmt. & Pretrial Order for Court Trial, *United States v. Bazaarvoice, Inc.*, No. 13-0133 (N.D. Cal. Feb. 19, 2013), ECF No. 29 (over five months of fact discovery, over one month of expert discovery, and three weeks for pretrial motions); Stipulated Scheduling & Case Mgmt. Order, *United States v. AT&T, Inc.*, No. 11-01560 (D.D.C. Sept. 23, 2011), ECF No. 33 (over three months of fact discovery, one month of expert discovery, and nearly three weeks for pretrial motions); Scheduling & Case Mgmt. Order, *United States v. JBS S.A.*, No. 08-5992 (N.D. Ill. Nov. 25, 2008), ECF No. 68 (nearly four months of fact discovery, two months of expert discovery, and five weeks for pretrial motions).

[4] Given the size and complexity of these mergers, at this time Plaintiffs do not believe it makes sense to invest substantial resources to hold a preliminary injunction hearing and then also hold a full trial on the merits at a later date. Thus far, Defendants in both cases agree with this position.

Second, these actions are far bigger and more complex than *Arch Coal*. That case challenged the purchase of two coal mines and involved only one product and geographic market. *Id.* at 114, 123. These cases involve many more product and geographic markets and billions of dollars more in commerce. Given the scope and complicated nature of the issues to be tried, more time is appropriate here.

## II. DEFENDANTS' PROPOSED SCHEDULES ARE UNREASONABLE AND WOULD PREJUDICE PLAINTIFFS AND THIRD PARTIES

Defendants would require that all pretrial litigation—including fact discovery, expert discovery, and all pretrial motions—be completed in ten weeks for an October 17, 2016 trial date in Anthem–Cigna and in time for a December 31, 2016 decision in Aetna–Humana. Defendants' proposals are impractical.

For example, Anthem's proposed schedule, sent to Plaintiffs last week, is unworkable in a number of respects. It sets a deadline of tomorrow, August 3, for Plaintiffs to issue written discovery to Defendants. But Cigna has not even filed its Answer, and is not required to do so until September 19. Fed. R. Civ. P. 12(a)(1)(A)(ii). Anthem's schedule also sets a deadline to identify final trial witnesses by September 12—only six weeks from now. It imposes no deadline on Anthem to decide whether it will offer a proposed remedy, nor does it provide Plaintiffs with any additional discovery time to investigate a remedy should Anthem decide to propose one. If every issue in both of these cases is to be tried, as is apparent from at least Anthem's Answer to the Complaint (*see* Anthem, Inc.'s Answer, ECF No. 15), Plaintiffs cannot be expected to develop and present full-scale trials on the merits under such an abbreviated schedule.

Defendants' proposals also fail to acknowledge the extensive discovery that will occur, such as the sweeping discovery that they wish to take of other government agencies. In a telling move, Aetna did not wait for fact discovery to open before it subpoenaed the Department of

Health and Human Services for (among other far-reaching requests) five years of data on every person in the United States who is enrolled in Medicare, three years of data on every person enrolled in a health insurance plan through the public exchanges, and all documents relating to enrollment or disenrollment for several different Medicare products, including daily reports dating back to 2010. *See* Defs.' Notice Subpoena Dept. Health & Human Servs. / Center Medicare & Medicaid Servs., July 29, 2016 (attached as Exhibit 1).

       Nor do Defendants' accelerated schedules appreciate that these related cases present complicated issues regarding the extent to which discovery in one case will be available to parties in the other case. Defendants have requested Plaintiffs' investigative materials relating to both mergers—not just their own. This is appropriate given that the mergers were investigated together. Going forward, it may also be appropriate for parties in both cases to share certain documents they receive in discovery. Plaintiffs are considering these issues and will work with Defendants to negotiate appropriate case management orders to address, among other things, document production, attendance at depositions, and expert discovery between the two actions. Those discussions should not be needlessly circumscribed, lest all parties find themselves in an unworkable situation during the midst of discovery.

       Defendants' proposals also would short-change the rights of third parties, particularly those who provided confidential and competitively sensitive information to Plaintiffs during their pre-complaint investigation. For example, Plaintiffs proposed a standard protective order in both cases that would require notice to every person who submitted information during the investigation (hundreds of third parties) of their rights under the order within five business days of its entry. Those third parties, many of whom are unfamiliar with this process, would then have 10 calendar days in which to object and seek additional protection from the Court. By contrast,

Anthem would require notice within just one business day and permit third parties only three calendar days in which to object, to fit within its short schedule. Anthem's approach highlights the impracticality of Defendants' expedited timetable.

## III. DEFENDANTS' JUSTIFICATIONS FOR RUSHING ARE WITHOUT MERIT

### A. Option dates in Defendants' merger agreements should not control the timing of these trials.

In both cases, Defendants are asking for a trial this year because of certain "option" dates in their merger agreements—December 31, 2016, in the Aetna–Humana agreement and April 30, 2017, in the Anthem–Cigna agreement. But these dates are within Defendants' control; they created them, and they can extend them. Neither merger dissolves automatically on the option date. Humana or Cigna may decide to terminate their agreements, they may take no action and let the agreements continue, or they may agree to extend the option dates. *Cf. FTC v. Heinz H.J. Co.*, No. 00-5362, 2000 WL 1741320, at *2 (D.C. Cir. Nov. 8, 2000) ("[A]lthough the appellees state that if an injunction pending appeal is granted they *may* abandon the merger, they do not unequivocally state that they *will* do so. . . . [And] even if the current merger plans were abandoned, the evidence does not establish that the efficiencies the appellees urge could not be reclaimed by a renewed transaction following success on appeal." (emphasis in original)).

Aetna's argument for a 2016 trial and is undercut by the fact that its merger agreement with Humana expressly included a provision for an extension, which the parties have already exercised to extend the option date to December 31, 2016.[5] Aetna and Humana are free to extend the date further to afford sufficient time to try this case on an appropriate schedule. In fact, they

[5]*See* Aetna Form 8-K, Item 8.01 (June 24, 2016); Aetna Form 8-K, Ex. 2.1 (July 7, 2015) (attaching original Merger Agreement), *available at* http://investor.aetna.com/phoenix.zhtml?c=110617&p=irol-sec.

have already informed their shareholders that while they "expect the mergers to be completed in the second half of 2016 . . . there can be no assurance as to when, or if, the mergers will occur."[6]

Anthem argues it needs a 2016 trial and decision because it is not getting along with Cigna and fears Cigna will not agree to extend the April 30, 2017 option date. *See* Anthem's Reply Mem. Supp. Mot. Expedited Status Conference at 2, ECF No. 17. The "contentious" relationship between Anthem and Cigna is certainly relevant to whether combining these two companies will create efficiencies or—more likely—inefficiencies. But whether Defendants are getting along (or not) should not cause the Court to rush its schedule or deprive Plaintiffs of an adequate opportunity to prepare for trial.

Nor does Anthem's failure to secure regulatory approval from state departments of insurance ("DOIs"), which have been investigating since last fall, justify an accelerated schedule.[7] Anthem blames the Plaintiff States for the fact that certain DOIs have suspended their investigations since the Complaint was filed, characterizing these decisions as a "self-help injunction." Anthem's Reply Mem. Supp. Mot. Expedited Status Conference at 2, ECF No. 17. But the insurance commissioners in all of the Plaintiff States are independent of their state's attorney general, and those commissioners made their own decisions about whether to suspend or continue their regulatory reviews. Anthem is free, while it litigates this case, to produce the documents it still owes to these state DOIs. Or Anthem can ask these state agencies to reopen their investigations before this litigation ends if it believes that there is a need to do so. This Court's review should not be compromised because of separate state DOI proceedings, and the

---

[6] Aetna Amendment No. 1 to Form S-4, at 158 (Aug. 28, 2015), *available at* https://www.sec.gov/Archives/edgar/data/1122304/000119312515305355/d67897ds4a.htm#toc67897_22.

[7] For example, Anthem filed its Form A application with the Connecticut Insurance Department on September 22, 2015. *See Athem-Cigna Documents*, CONNECTICUT INSURANCE DEPARTMENT, http://www.catalog.state.ct.us/cid/portalApps/anthem.aspx.

option date in Anthem's merger agreement should not rush either the DOIs or this Court in the exercise of their respective functions.

Defendants assert that these mergers are beneficial to their companies and their shareholders. If that is true, they will find a way to extend their contracts so they can consummate their transactions if this Court, after full and fair trials, denies Plaintiffs' requests for injunctions. The Court should not allow the Defendants' contracts to unilaterally limit the time that the Court believes is necessary to consider the evidence and issue a ruling. *Cf. Whole Foods*, 548 F.3d at 1041 ("I appreciate that the district court expedited the [preliminary-injunction] proceeding as a courtesy to the defendants, who wanted to consummate their merger just thirty days after the hearing . . . , but the court should have taken whatever time it needed to consider the FTC's evidence fully.").

**B. A government investigation is no substitute for civil discovery and does not warrant an unreasonably expedited schedule.**

Courts have long recognized that a government agency's pre-complaint investigation is not a substitute for, nor should it limit, post-complaint discovery.[8] Investigations are focused on deciding whether to bring an enforcement action and, if so, the scope of the lawsuit. That is what happened here. Any suggestion by Defendants that Plaintiffs investigated the proposed mergers

[8] *See, e.g.*, *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the [agency] had already conducted a pre-filing investigation, . . . 'there is no authority which suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation into the facts underlying its case.'" (quoting *SEC v. Saul*, 133 F.R.D. 115, 118 (N.D. Ill. 1990))); *Saul*, 133 F.R.D. at 118–19 ("[T]he Court finds considerable merit in the [agency]'s contention that once it has completed its investigation and filed suit, it is entitled to review its investigation and avail itself of its discovery rights in order to prepare its case for trial. . . . Once the complaint has been filed and the defendants have answered, the issues requiring resolution have been clarified, and all parties must be afforded the opportunity to conduct discovery and prepare for trial with those issues in mind."); *United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979) ("It is important to remember that the [Justice] Department's objective at the pre-complaint stage of the investigation is not to 'prove' its case but rather to make an informed decision on whether or not to file a complaint." (quoting H. R. REP. 94-1343 at 26, Hart-Scott-Rodino Antitrust Improvements Act of 1976)).

and therefore need no additional discovery is incorrect and contrary to law. Each of these mergers is unprecedented in scale, and Plaintiffs (including the Plaintiff States) were investigating both at the same time.

First, given the size and importance of these two mergers, Plaintiffs spent considerable time during the investigation evaluating competition for numerous products in hundreds of geographic areas. A number of different lines of business in which Defendants compete were considered but ultimately not included in either Complaint.

Second, while the United States issued requests for documents to the merging companies in September 2015, Defendants did not substantially comply with those requests for several months—Anthem complied on February 9; the other three Defendants complied on March 4. Those productions took weeks to process for review and had numerous problems that were not resolved for months. All told, Plaintiffs have had about six months to review millions of documents, prepare for and take investigative depositions, engage in substantive discussions with the parties, review the parties' remedy proposals, and make an enforcement decision. That process was sufficient to state well-informed allegations, but more time is needed to prepare for two significant trials in which Defendants appear unwilling to narrow the issues and likely will be raising new defenses.

Plaintiffs need a reasonable amount of time and additional, targeted discovery to prepare their cases for trial. Only one of the four Defendants (Anthem) has answered. It apparently will contest every substantive allegation of the Complaint has offered seven affirmative defenses. Anthem, Inc's Answer, ECF No. 15. Similarly, counsel for Aetna and Humana did not respond to the United States' questions on whether the issues to be tried could be narrowed by stipulation, and do not propose to file Answers until August 12. Neither set of Defendants has

ruled out offering a proposed remedy at trial. Plaintiffs cannot prepare discovery on a remedy until Defendants reveal what remedy, if any, they plan to propose. Defendants' unwillingness to narrow the scope of this litigation is at odds with their request for an accelerated schedule.

These mergers threaten to harm millions of consumers across the country, as well as the doctors and hospitals who provide their medical care. That threat should be carefully evaluated, as should any benefits Defendants may argue would flow from the mergers. Purely private commercial concerns—particularly those that are wholly within the control of the merging parties—should not surpass the public's interest in effective antitrust enforcement or deprive the Court of the evidence and time it needs to evaluate the important issues presented by these cases.

**CONCLUSION**

Plaintiffs respectfully request that the Court order (1) that these related cases be managed jointly for purposes of pretrial litigation and tried separately; (2) the parties in each case to meet and confer by August 8, 2016, to discuss the issues set forth in Local Rule 16.3; and (3) the parties in each case to submit proposed case management and scheduling orders to the Court by August 12, 2016.

Dated August 2, 2016

/s/ Paula Lauren Gibson
Paula Lauren Gibson
Deputy Attorney General
Office of the Attorney General of California
300 S Spring Street
Suite 1702
Los Angeles, CA 90013
Phone: (213) 897-0014
Email: paula.gibson@doj.ca.gov

/s/ Rachel O. Davis
Rachel O. Davis
Assistant Attorney General
Office of the Attorney General of Connecticut
55 Elm Street
PO Box 120
Hartford, CT 06106
Phone: (860) 808-5041
Email: rachel.davis@ct.gov

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Chief, Multistate Enforcement
Office of the Attorney General of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3851
Email: liz.brady@myfloridalegal.com

/s/ Jennifer A. Thomson
Jennifer A. Thomson
Senior Deputy Attorney General
Antitrust Section
Office of the Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 787-1190
Email: jthomson@attorneygeneral.gov

*Attorneys for States of California, Connecticut, Florida, and Pennsylvania, and on behalf of the Plaintiff States*

Respectfully submitted,

/s/ Jon B. Jacobs

Jon B. Jacobs (D.C. Bar No. 412249)
Scott I. Fitzgerald
U.S. Dept. of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Phone: (202) 598-8916
Email: jon.jacobs@usdoj.gov

/s/ Craig Conrath

Craig Conrath
Ryan M. Kantor
Patricia L. Sindel (D.C. Bar No. 997505)
U.S. Dept. of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Phone: (202) 532-4560
Email: craig.conrath@usdoj.gov

*Attorneys for United States of America*

**APPENDIX**

***Plaintiffs' Proposed Schedule***

| Event | Estimated Dates |
|---|---|
| Fact discovery begins on granting of the Protective Order | August 8, 2016 |
| Parties produce Investigation Materials | August 11–September 8, 2016* (Conditional on Defendants in both mergers obtaining documents from each other) |
| Answers to Complaint due | September 19, 2016 |
| Deadline for amendments to pleadings, including adding additional parties | August 11, 2016 |
| Parties exchange initial fact witness lists | October 3, 2016 |
| Each side designates all experts that it will call in its respective case-in-chief and defense case, along with a brief statement of the subject matter on which the expert will testify | November 18, 2016 |
| Fact discovery closes | December 2, 2016 |
| Parties exchange expert reports on the issues on which they bear the burden and final witness lists | December 16, 2016 |
| Parties exchange rebuttal expert reports | January 13, 2017 |
| Expert discovery (including expert depositions) closes and close of supplemental discovery for additional fact witnesses from the Parties' final witness list | January 27, 2017 |
| Deadline for *Daubert* and other pretrial motions, including motions in limine | February 3, 2017 |
| Deadline to file opposition to *Daubert* and other pretrial motions | February 10, 2017 |
| Final Pretrial Conference | February 17, 2017 |

***Remedy Proposals***

If Defendants offer any remedy proposal before the close of discovery, fact and expert discovery will not close until at least 60 days after Defendants provide notice of the remedy and produce a final, signed divestiture agreement to Plaintiffs. If Defendants propose a remedy after the close of discovery, fact and expert discovery will reopen for at least 60 days to allow Plaintiffs sufficient time to investigate the proposal to determine if it alleviates the anticompetitive effects alleged by the Plaintiffs. All subsequent litigation deadlines will be extended on a day-for-day basis.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2016, I caused a true and correct copy of the foregoing document to be served upon the parties of record via the Court's CM/ECF system.

/s/ Jon B. Jacobs

Jon B. Jacobs (D.C. Bar No. 412249)
U.S. Dept. of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Phone: (202) 598-8916
Email: jon.jacobs@usdoj.gov

*Attorney for United States of America*