UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al,*

        Plaintiffs,

V.

ANTHEM, INC., *et al,*

        Defendants.

Civil Action No. 16-1493 (ABJ)

## STIPULATION

IT IS HEREBY STIPULATED by Plaintiff United States of America and Defendants Anthem, Inc. and Cigna Corp., subject to the Court's approval, that:

On September 1, 2016, Defendants served a deposition notice under Fed. R. Civ. P. 30(b)(6) seeking depositions of the U.S. Department of Health and Human Services ("HHS"), the U.S. Department of Veterans Affairs ("VA"), the Defense Health Agency ("DHA"), and the Office of Personnel Management ("OPM").

In light of the United States' concerns about the potential for disputes regarding the deliberative process privilege, Defendants agree to withdraw their Fed. R. Civ. P. 30(b)(6) deposition topics of September 1, 2016. In turn, the United States stipulates to the following facts and statements. These statements are made on behalf of the U.S. Department of Health and Human Services, the U.S. Department of Veterans Affairs, the Defense Health Agency, and the Office of Personnel Management, as identified below. The United States agrees that each

statement below is admissible at trial under the Federal Rules of Evidence, including that the United States will not object to these statements on hearsay grounds.

## U.S. Department of Health and Human Services ("HHS")

### HHS Analyses, Findings and Priorities

1. Completed analyses by the Office of the Assistant Secretary for Planning and Evaluation's (ASPE) of the U.S. Department of Health and Human Services (HHS) (including any analyses conducted for other agencies or divisions within HHS) that are not related to ongoing internal agency policy deliberations or otherwise precluded by law from public disclosure are published in a publicly available form on the ASPE website.

2. Publications, articles, press releases, Research Briefs, and Issue Briefs published on the ASPE website are admissible for this trial, and the United States will not object on hearsay grounds.

3. Completed analyses by the Center for Consumer Information and Insurance Oversight (CCIIO) of the U.S. Department of Health and Human Services (HHS) (including any analyses conducted for other agencies or divisions within HHS) that are not related to ongoing internal agency policy deliberations or otherwise precluded by law from public disclosure are published in a publicly available format on the CCIIO website or through notice-and-comment rulemaking.

4. Publications, articles, press releases, Research Briefs, and Issue Briefs published on the CCIIO website are admissible for this trial, and the United States will not object on hearsay grounds.

5. Completed analyses by the U.S. Department of Health and Human Services (HHS) (including any analyses conducted for other agencies or divisions within HHS) that are

not related to ongoing internal agency policy deliberations or otherwise precluded by law from public disclosure are published in a publicly available form on the HHS website.

6. Publications, articles, press releases, Research Briefs, and Issue Briefs published on the HHS website are admissible for this trial, and the United States will not object on hearsay grounds.

**Medicare Reimbursement Rates**

7. Medicare has four basic parts: (1) Medicare Part A, "Hospital Insurance Benefits for the Aged and Disabled," which covers institutional services such as hospitals, skilled nursing facilities, hospices, and home health services after hospitalizations; (2) Medicare Part B, "Supplementary Medical Insurance Benefits for the Aged and Disabled," a voluntary program that supplements Medicare Part A by covering the services of physicians and other health practitioners as well as a variety of medical and other health services that are not covered by Medicare Part A; (3) Medicare Part C, which provides Medicare beneficiaries the option of receiving their Medicare benefits from health plans offered by private insurers; and, (4) Medicare Part D, a prescription drug benefit available to beneficiaries enrolled in Medicare Parts A and B and enrollees in Medicare Part C.

8. Medicare establishes policy under each part consistent with the objectives of that part and the applicable statutory mandates. Under Medicare Part A, for example, Medicare reimburses most acute inpatient hospital stays under the inpatient prospective payment system ("IPPS."). To account for a patient's needs under the IPPS, Medicare assigns stays to Medicare severity diagnosis related groups (MS-DRGs), which categorizes patients with similar clinical problems that are expected to require similar amounts of hospital resources. Each MS-DRG has a relative weight that reflects the expected relative costliness of inpatient treatment for patients in those groups. The payment rates

for MS-DRGs are also adjusted to reflect the local labor market where services are provided. In addition to these factors, the rates are also increased for other factors, such as for facilities that operate an approved graduate medical education program or treat low-income and uninsured patients, and outlier payments are added for cases that are extraordinarily costly. Conversely, rates are reduced for certain transfer cases. The IPPS payment rates are intended to cover the costs that reasonably efficient providers would incur in furnishing care.

9. After establishing IPPS, Congress subsequently established prospective payment systems for home health agencies, hospital outpatient services, skilled nursing facilities, inpatient rehabilitation facilities, long-term care hospitals, inpatient hospital services furnished in psychiatric hospitals and units, and end-stage renal disease facilities.

10. Establishing Prospective Payment System (PPS) rates is a complex and lengthy process. The rates themselves are specific to the services and statutory requirements covered by each distinct PPS system, e.g., the IPPS sets payment rates for inpatient hospitals, long-term care PPS sets rates paid to long-term care hospitals, etc. The Secretary promulgates most PPS rates through notice-and-comment rulemaking in accordance with the Administrative Procedure Act. In these publications, the Secretary explains the background and the reason for the specific PPS rates. The Secretary updates most PPS rates on an annual basis.

11. In the IPPS context, for example, the Secretary promulgated regulations governing the IPPS system at 42 C.F.R. Part 412. Congress mandated that the Secretary update IPPS rates on an annual basis. Each year the Secretary publishes a notice of proposed updates

and requests public comments. The Secretary responds to the comments and publishes the final IPPS rates, which take effect in October.

12. The annual IPPS rate setting and update process involves changes to many areas of the payment system. These changes are driven by updated claims information, updated cost information from the hospitals, price changes in the goods and services hospitals use to provide care, statutory changes, and regulatory goals. The areas impacted include the MS-DRGs themselves, the relative weights assigned to those MS-DRGs, the adjustments for local labor market differences, and other adjustments to the payment rates.

13. Each of the changes, and the reasoning behind the changes, is discussed in the notice of proposed rulemaking. Because the issues vary from year-to-year, the basis for making updates and changes in the IPPS rates often change from year-to-year. Thus, in order to determine the basis for a specific year's IPPS rate, one must review the proposed and final rulemaking published for the fiscal year.

**Medical Loss Ratios ("MLRs")**

14. The CCIIO website is public and provides filings by insurers and MLR data, including rebates owed.

15. Section 2718 of the Public Health Service Act (codified at 42 USC § 300gg-18) establishes the Medical Loss Ratio (MLR) requirements for health insurance issuers for the individual, small group and large group commercial markets, as defined in the statute. The MLR requirements apply only to fully insured products. Section 2718 establishes an 85% MLR for the large group market segment and an 80% MLR for the individual and small group market segments. Issuers that fail to meet the applicable MLR standard are required to pay rebates to enrollees. Regulations implementing this provision have been promulgated at 45 C.F.R. § 158.210(a).

**The U.S. Department of Veterans Affairs ("VA")**

16. Publications, articles, and press releases published on a publicly-available U.S. Department of Veterans Affairs ("VA") website reflect the policy and/or findings of the VA at the time of publication, where expressly noted. All of the VA material to which the United States has directed Anthem in response to its 30(b)(6) request to the VA reflects the policy and findings of the VA.

17. The VA uses the Health Economics Resource Center of the VA ("HERC") Average Cost dataset to estimate the cost of an inpatient medical/surgical care stay at a VA hospital based on observed characteristics of the stay (e.g., the diagnosis-related group ("DRG") and length of stay).

18. VA's Reasonable Charges are formalized based on 38 CFR 17.101, and are not set based on cost data. VA's Reasonable Charges are set at the 80th percentile of Average Nationwide Billed Charges. The methodology for the development of Reasonable Charges is based on Average Nationwide charge data obtained from various data source reports such as the following: CMS Medicare Provider Analysis and Review (MedPar), MarketScan (TRUVEN), Fair Health charge databases, and Medicare SAFS 5% sampling reports and other CMS data reports. Facility and Professional charges are both set on Nationwide charge data information. VA's charges are also adjusted for locality using Geographic Area Adjustment Factors (GAAF's). Inpatient charges are broken down by Room and Board and Ancillary per diem charges set using nationwide charge data while Outpatient charges are based on Medicare's APC payment structure using Nationwide charge data and set up using CPT and HCPCS codes.

**The Defense Health Agency ("DHA")**

19. The map available at http://www.tricare.mil/About/Regions accurately reflects the regions covered by the three TRICARE Managed Care Support Contracts (MCSCs) for 2015 and 2016.

20. The Secretary of Defense administers the TRICARE program and has delegated that authority to the Defense Health Agency (DHA). In 2016, United HealthCare, Humana, and Health Net are the three contractors selected to carry out the MCSCs.

21. A competitive bidding process was used to award the three MCSCs. In 2016, DHA exercised options to extend the MCSCs because it determined on a global basis that exercising the options was preferable to a new procurement. *See* 48 CFR 17.207.

22. The map available at http://www.tricare.mil/Home/About/Partners/Changes accurately reflects the regions covered by the two TRICARE Managed Care Support Contracts for 2017.

23. The two 2017 MCSCs were awarded to Humana and Health Net in the T-2017 procurement. There is a bid protest before GAO pending. Therefore, the starting dates for the contracts are not known.

24. A competitive bidding process was used to award the two MCSCs. "This is a best value source selection conducted in accordance with Federal Acquisition Regulation (FAR) Part 15.3, Source Selection, as supplemented by the Defense Federal Acquisition Regulation Supplement (DFARS)." T-2017 TRICARE Request for Proposal, Section M, https://www.fbo.gov/index?s=opportunity&mode=form&id=d3281e7783b6bee998c7a82b579c8b73&tab=core&_cview=1.

25. DHA chose to award the two MCSCs to Humana and Health Net after considering the factors set forth in the T-2017 TRICARE Request for Proposal, Section

M, https://www.fbo.gov/index?s=opportunity&mode=form&id=d3281e7783b6bee998c7a82b579c8b73&tab=core&_cview=1.

**The U.S. Office of Personnel Management ("OPM")**

26. All Federal Employee Health Benefits ("FEHB") plans available in each U.S. state for 2016 are listed at https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/. Plans that were available in previous years are listed at https://www.opm.gov/healthcare-insurance/healthcare/plan-information/previous-years/.

27. A Health Benefits Carrier that is qualified and offers plans pursuant to 5 U.S.C. 8901 *et seq.* and meets the minimum standards set forth in 48 C.F.R. Part 1609, Subpart 1609.70 is eligible to contract with OPM to provide benefits to federal employees through FEHB.

28. All Health Benefits Plans must meet the minimum standards set forth in 5 C.F.R. 890.201.

29. In order for a Health Benefits Plan to be offered to federal employees through FEHB, it must meet statutory criteria and receive approval by OPM per 5 C.F.R. 890 Subpart B. Applications are reviewed for evidence of compliance with the minimum standards set forth in 5 C.F.R. 890.203.

30. Each FEHB plan listed at https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/ meets the minimum standards set forth in 5 C.F.R. Part 890.201.

31. The OPM website contains a complete list of plans that meet minimum standards which are offered through the FEHB Program in a state, the District of Columbia, or a U.S. territory (or a geographic service area within the state, District of Columbia or a U.S. territory) for a given year.  Each plan listed on the website is associated with a plan brochure that may be accessed by clicking the icon in the column labeled "plan

brochure," next to the plan name and its plan code. Each plan brochure includes an "Introduction" section that identifies the carrier in contract with OPM to offer that plan. Please note that OPM enters into a contract with a "carrier," which is a term defined by statute. Whether a particular carrier is an association, an employee organization, or is underwritten or administered by another entity is generally described in the "Introduction" section of the plan brochure for that plan. In addition, a carrier may have arrangements or agreements with one or more entities, affiliates, subsidiaries or related companies that are not specifically identified or set forth in the plan brochure.

32. Links to plans offered in 2016, for the states identified below (which is not a complete list of all states, territories, or geographic areas where OPM offers FEHB plans), from which plan brochures may be readily accessed, are as follows:

   a. California - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/ca

   b. Colorado - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/co

   c. Connecticut - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/ct

   d. Georgia - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/ga

   e. Illinois - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/il

   f. Indiana - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/in

   g. Kentucky - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/ky

   h. Maine - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/me

   i. Missouri - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/mo

j. Nevada - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/nv

k. New Hampshire - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/nh

l. New Jersey - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/nj

m. New York - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/ny

n. North Carolina - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/nc

o. Ohio - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/oh

p. Pennsylvania - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/pa

q. Vermont - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/vt

r. Virginia - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/va

s. Wisconsin - https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/2016/State/wi

33. OPM issues carriers letters for a variety purposes. Among those purposes, OPM issues carrier letters to identify priorities when it wants Health Benefits Carriers to modify their FEHB insurance plans.

34. OPM issues carrier letters that describe priorities for FEHB plans that are generally reflective of directions in the healthcare industry, particularly as they affect large employers.

35. Carrier Letter No. 2016-04 "Updated FEHB Guidance on Population Health and Wellness" (March 4, 2016) speaks for itself. A statement that is incomplete but consistent with Carrier Letter No. 2016-04 is that OPM requested that Health Benefits Carriers

include the following wellness programs: 1. Health Risk Assessment; 2. Biometric Screening; 3. Results (using results from 1 and 2 to initiate referrals to health coaching or other plan sponsored programs); 4. Preventive Services; 5. Tobacco cessation; and 6. Hypertension.

| | |
|---|---|
| Dated: October 20, 2016<br>Washington, D.C. | Respectfully submitted, |
| /s/ Sarah Oldfield<br>Jon B. Jacobs (D.C. Bar No. 412249)<br>Scott I. Fitzgerald<br>U.S. Department of Justice, Antitrust Division<br>450 Fifth Street, NW, Suite 4100<br>Washington, DC 20530<br>Phone: (202) 598-8916<br>Facsimile: (202) 307-5802<br>E-mail: jon.jacobs@usdoj.gov<br><br>*Attorneys for Plaintiff United States of America* | /s/ J. Mark Gidley<br>Christopher M. Curran (D.C. Bar No. 408561)<br>J. Mark Gidley (D.C. Bar No. 417280)<br>George L. Paul (D.C. Bar No. 440957)<br>Matthew S. Leddicotte (D.C. Bar No. 487612)<br>**WHITE & CASE** LLP<br>701 Thirteenth Street, NW<br>Washington, DC  20005<br>Tel:  +1 202 626 3600<br>Fax:  +1 202 639 9355<br>ccurran@whitecase.com<br>mgidley@whitecase.com<br>gpaul@whitecase.com<br>mleddicotte@whitecase.com<br><br>Robert A. Milne (*pro hac vice*)<br>Jack E. Pace III (*pro hac vice*)<br>Michael J. Gallagher (*pro hac vice*)<br>Martin M. Toto (*pro hac vice*)<br>Heather M. Burke (*pro hac vice*)<br>**WHITE & CASE** LLP<br>1155 Avenue of the Americas<br>New York, New York  10036-2787<br>Tel:  +1 212 819 8200<br>Fax:  +1 212 354 8113<br>rmilne@whitecase.com<br>jpace@whitecase.com<br>mgallagher@whitecase.com |

mtoto@whitecase.com
hburke@whitecase.com

Richard L. Rosen (D.C. Bar No 307231)
Wilson Mudge (D.C. Bar No 455787)
Danielle M. Garten (D.C. Bar No 976591)
Arnold & Porter LLP
601 Massachusetts Ave., NW
Washington, DC  20001
Tel:  +1 202 942 5000
Fax:  +1 202 942 5999
richard.rosen@aporter.com
wilson.mudge@aporter.com
danielle.garten@aporter.com

*Counsel for Anthem, Inc.*


 /s/ Daniel J. Howley
Charles F. Rule (D.C. Bar No. 370818)
Joseph J. Bial (D.C. Bar No. 493638)
Andrew Forman (D.C. Bar No. 477425)
Daniel J. Howley (D.C. Bar No. 983664)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7319
rrule@paulweiss.com
jbial@paulweiss.com
aforman @paulweiss.com
dhowley@paulweiss.com

*Counsel for Cigna Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016, a true and correct copy of the foregoing Stipulation was served via the Court's CM/ECF system, pursuant to Rule 5.4(d) of the Local Civil Rules and Rule 5(b) of the Federal Rules of Civil Procedure, upon all counsel of record.

Dated: October 21, 2016
       Washington, D.C.

Respectfully submitted,

 /s/ *J. Mark Gidley*
J. Mark Gidley (D.C. Bar No. 417280)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Tel:  +1 202 626 3600
Fax:  +1 202 639 9355
mgidley@whitecase.com

*Counsel for Anthem, Inc.*