UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*

    Plaintiff,

    v.

ANTHEM, INC. AND CIGNA CORP.,

Defendants.

Case No. 1:16-cv-01493 (ABJ)

**Special Master Report & Recommendation No. 10**

    Pending before the Special Master are Motions to Seal submitted by Defendant Anthem and Defendant Cigna, and supplements to those Motions, all of which the Special Master has jurisdiction over pursuant to the Court's November 4 Stipulated Order on the Use of Confidential Information at Trial. [Dkt. No. 214 at ¶¶ B(5) and C(4)]. None of the Motions or supplemental Motions are opposed by any party to this case, or by any other entity. The Special Master has conducted an *in camera* review of each Motion, letter brief and of every document as to which sealing is requested. In addition, with respect to Anthem's request, the Special Master has reviewed and relied upon the declarations of Anthem Vice President and Counsel Jay Wagner, and of Anthem outside counsel Michael Wagner. With respect to Cigna's request, the Special Master has reviewed and relied upon the declarations of Cigna outside counsel Joseph Bial.

    Based on this review, the Special Master sets forth the recommendations detailed below.

    **I.**    **Legal Standard**

    "[T]he starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." [*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal quotation marks omitted)]. Nevertheless, "the right of access is far from absolute," and "the decision as to access 'is one best left to the sound

discretion of the trial court.'" [*McConnell v. Federal Election Comm'n*, 251 F. Supp. 2d 919, 925 (D.D.C. 2003) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978))].

In determining whether a party or non-party has overcome the presumption of public access, a court should consider:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interest asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

[*Primas v. District of Columbia*, 719 F.3d 693, 698-99 (D.C. Cir. 2013) (quoting *EEOC v. National Children's Center, Inc.,* 98 F.3d 1406, 1409 (D.C.Cir.1996); *see United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980))]. In assessing these factors, "It is imperative that a district court articulate its reasons for electing to seal or not to seal a record." [*Primas*, 719 F.3d at 699 (citing *National Children's Center*, 98 F.3d at 1410)].

The Special Master has reviewed all of the papers submitted in light of the six factors outlined above, and makes the following findings.

**II.     Recommendations**

As an introductory note, the Special Master notes that the *Hubbard* analysis of these documents requires a weighing of all six above-listed factors. Factors two through five weigh in favor of granting all of Defendants' sealing requests. With respect to the first and final factors, namely, the need for public access to the documents at issue and the purposes for which the documents were introduced during the judicial proceedings, the Special Master lacks sufficient information to conclude that either factor outweighs the Defendants interests in maintaining the confidentiality of these documents because the documents have not yet been used at trial. As such, factors one and six are better assessed during and following trial when it is clear precisely

how and to what extent the parties rely upon these materials.[1] Regardless, at this time, and based upon the current record, the Special Master simply cannot conclude that either factor one or six outweighs the Defendants' interest in keeping this information confidential and therefore recommends that the Court grant Defendants' Motions.[2]

1. **Anthem Motion to Seal (November 8, 2016)**

    a. **Deposition transcripts**

Anthem asks the Court to seal portions of fourteen deposition transcripts. More specifically, Anthem seeks complete non-disclosure protection for the redacted portions of seven depositions; partial non-disclosure protection for the redacted portions of one deposition; and, for the remaining six depositions, partial non-disclosure protection for most redacted portions, and complete non-disclosure for a limited subset of the redacted portions.

The Special Master has reviewed each deposition in its entirety. As Mr. Wagner's declaration notes, the redacted portions of each discuss confidential Anthem rate information, strategies for negotiating with providers and related entities, and Anthem's analyses of its relationship with providers and other Anthem business partners. Based upon the Special Master's review of these documents, it appears that the portions of these deposition transcripts over which Anthem seeks partial non-disclosure discuss Anthem non-public business activities in a more

---

[1] If, for example, the parties rely upon this information primarily to support their "Tier 2" exhibits, or to provide background information in support of the claims and defenses at issue in this case, the public would have a much lower need to access the testimony. If the testimony is ultimately relied upon as a "key" element of any party's case in chief or defense, then the public "need" may be elevated.

[2] Indeed, as the Court noted in its November 18 Minute Order adopting Report & Recommendation No. 8 (addressing non-party Motions to Seal), at the conclusion of the trial in this matter, the Court may elect to reconsider the sealing question. The Special Master agrees that the Court will be in a better position at that time to evaluate the public need for the information contained in these exhibits and deposition transcript excerpts based upon how the parties use this material at trial.

general fashion. The portions as to which complete non-disclosure is sought discuss Anthem strategies, pricing information and related matters in very specific terms.

The Special Master recommends granting Anthem's Motion and requested sealing designations as to these deposition excerpts, based upon the following *Hubbard* analysis:

i. <u>The need for public access to the documents at issue</u>

ii. As noted in the introductory paragraph above, there arguably may be some public need for these documents, but the Special Master is unable to recommend, based upon the current record, that this need outweighs the remaining *Hubbard* factors. The Court will be in a better position to assess this need following the introduction and use of the deposition testimony at trial. <u>The extent of previous public access to the documents;</u>

The declarations of Mr. Gallagher and Mr. Wagner confirm that there has been no prior public access to these documents.

iii. <u>The fact that someone has objected to disclosure, and the identity of that person</u>

Anthem strongly objects to the disclosure of this information, noting that this information constitutes commercially sensitive information, disclosure of which risks causing Anthem serious harm and may violate Anthem contracts with outside entities. (*See* Wagner Decl. at ¶ 29).

By contrast, no party nor any other entity has objected to Anthem's request to seal this material.

iv. <u>The strength of any property and privacy interest asserted;</u>

The information contained in these deposition excerpts includes highly sensitive and confidential business information which Anthem has not disclosed publicly. In addition, Anthem

4

represents, that much of the testimony implicates information as to which "Anthem has contractual agreements with providers, clients, the BCBSA, Cigna, and others to maintain the confidentiality of much of the information" contained in this testimony. (Anthem 11/8/16 Mot. at 3; *see* Wagner Decl. at ¶ 29). The Special Master finds that this factor weighs strongly in favor of sealing this information.

v. <u>The possibility of prejudice to those opposing disclosure</u>

Disclosure of these documents risks causing Anthem significant competitive harm because it would grant Anthem competitors insight into Anthem's business strategy, pricing structure, market analyses, and related concerns. As a result, Anthem's competitors would be able to strategize methods to more effectively compete against Anthem offerings.

In addition, disclosure would grant the healthcare providers with whom Anthem contracts unfair insight into Anthem's business strategy, reimbursement rates, and approach to provider negotiations.

vi. <u>The purposes for which the documents were introduced during the judicial proceedings.</u>

As discussed with respect to the first Hubbard factor, the current record does not provide information regarding the purposes for which these documents will be introduced, and the trial judge will be in a superior position after trial to evaluate this factor in the context of the actual reasons for which any particular document is introduced. This factor therefore does not weigh either in favor of or against sealing.

Based on the analysis of all of these factors, the Special Master recommends sealing the deposition transcript excerpts at this time.

b. **Trial Exhibits**

Anthem asks the Court to seal, in whole or in part, 582 trial exhibits. The exhibits as to which Anthem seeks sealing include both Defendant and Plaintiff exhibits, and exhibits included in the "Tier 1" and "Tier 2" categories.

The Special Master has reviewed every page of each exhibit as to which sealing is requested. For the same reasons articulated with respect to the Deposition excerpts, and based upon the same *Hubbard* analysis, the Special Master recommends that the Court grant Anthem's Motion at this time. Again, following introduction of these exhibits and based upon the manner in which the exhibits are used, the Court may elect to revisit this ruling.

2. **Anthem First Supplement to its Motion to Seal (November 15, 2016)**

In its first supplement to its Motion to Seal, Anthem asks the Court to grant partial non-disclosure protection over an additional 39 Plaintiff trial exhibits. According to Anthem, each of these 39 exhibits "contains non-public business information concerning merger integration analyses and strategies." (Anthem Nov. 15 Letter Brief at 1).

These exhibits contain documents that were the subject of Report and Recommendation No. 5. The Special Master still finds that the majority of the *Hubbard* factors weigh in favor of sealing these documents at this time. More specifically, the public has had no prior access to these documents; Anthem objects to disclosure of these documents; no entity has objected to Anthem's request to seal; and, most compelling, Anthem has a strong property and privacy interest in maintaining the confidentiality of these documents, as their release could cause significant harm to Anthem's business interests.

As to the remaining *Hubbard* factors, namely, the interest of the public and the purposes for which the documents will be introduced, the record currently available does not permit a recommendation that these factors weigh either for or against sealing these documents because it

is not clear how or to what extent any party intends to rely on these documents. For these reason, the Special Master recommends that the Court grant Anthem's Motion at this time. For the same reasons described above with respect to Anthem's original Motion to Seal, the Court may elect to reconsider the sealing question based upon how these documents are used at trial.

### 3. Anthem Second Supplement to its Motion to Seal (November 18, 2016)

Anthem's Second Supplement to its Motion to Seal asks the Court to grant partial non-disclosure protection over eight exhibits, and complete non-disclosure protection over 23 exhibits. Anthem represents that each document contains "trade secret and competitively sensitive, non-public business information." (Anthem 11/18/16 Mot. at 1).

The same analysis applicable to the documents provided as part of Anthem's first Supplement to its Motion to Seal applies to these exhibits. The public has had no prior access to these documents; Anthem objects to disclosure of these documents; no entity has objected to Anthem's request to seal; and Anthem has a strong property and privacy interest in maintaining the confidentiality of these documents, because their release could cause significant harm to Anthem's business interests.

Here, again, the Special Master cannot assess the extent of the public interest in accessing these exhibits because the record does not show the purpose for which they will be introduced. The Court will be in a superior position to make this assessment at the close of trial, and to order disclosure of any documents as to which the Court concludes there is a need for public access which outweighs Anthem's strong interest in keeping this material confidential.

### 4. Cigna Motion to Seal (November 9, 2016)

Cigna's Motion to Seal asks the Court to grant partial non-disclosure protection to excerpts from 32 deposition transcripts and to portions of 410 trial exhibits. These trial exhibits

include both "tier 1" and "tier 2" exhibits, and many of Cigna's requests as to these exhibits overlap with Anthem's requests for sealing. According to Mr. Bial's November 8 declaration, "[t]he majority of the relevant documents are exhibits from Cigna's own files or transcripts of depositions by Cigna employees. Most of the additional documents that Cigna would propose sealing contain information provided by Cigna to a third party in a highly confidential capacity." (Bial 11/8/16 Decl. at ¶ 5).

The Special Master recommends that the Court grant Cigna's Motion at this time, for the same reasons discussed with respect to the Anthem's original Motion to Seal, addressed above. More precisely, as to the first *Hubbard* factor, the Court will be in a better position to evaluate the need for public access to these documents when it becomes clear how these documents will be used at trial. As to the second factor, Cigna's letter brief states plainly that "the public has never before had access to these documents, which were produced in discovery under the terms of this action's Protective Order." (Cigna 11/8/16 Mot. at 2).

With respect to the third *Hubbard* factor, Cigna strongly objects to the disclosure of the documents, and while no non-party had likewise objected, it appears that the interests of non-parties are implicated inasmuch as some documents discuss Cigna's relationship with those non-parties. The Special Master expects that such non-parties would object to the disclosure of their proprietary information if they were made aware of the risk that it may be disclosed.

Regarding the fourth and fifth factors, Cigna has a strong interest in keeping this material confidential. In its letter brief, Cigna states that these documents "contain competitively sensitive information on Cigna's business and strategy – public disclosure of the information could impede Cigna's ability to compete and imperil literally billions of dollars invested in developing its business." (Cigna 11/8/16 Mot. at 2). Based on an *in camera* review of the documents, the

Special Master agrees that they contain highly sensitive information, and accepts Cigna's representation, under penalty of perjury, that disclosure of this information "could significantly harm Cigna's 'competitive standing' by disclosing to the public, and to competitors in the market place, highly confidential information about Cigna's business, and thereby prejudice Cigna." (Bial 11/8/16 Decl. at ¶ 5).

For similar reasons, disclosure of these documents risks causing Cigna significant competitive harm by granting its competitors insight into Cigna's sales, pricing, provider rate, membership, estimated market share, customer names and related sensitive financial information. As a result, Cigna's competitors would be able to strategize means of competing against Cigna more effectively. Disclosure of these materials would also grant healthcare providers unfair leverage when negotiating with Cigna.

Finally, with regard to the final factor, at the present time the Special Master again believes the Court is in the best position to evaluate the purposes for which the documents will be introduced during the judicial proceedings. This factor therefore does not factor into the Special Master's recommendation at this time.

Based upon this analysis, the Special Master recommends that the Court grant Cigna's Motion. If these documents are used at trial in a manner that tends to increase the need for public access, however, the Special Master notes that the Court may elect to reconsider the sealing question.

5. **Cigna Supplement to Motion to Seal (November 18, 2016)**

Cigna's supplemental submission asks the Court to seal, in full or in part, 25 trial exhibits under the "partial non-disclosure" provision of the Court's November 4 Order. Two of these exhibits are "Tier 1" exhibits, and the remainder are "Tier 2."

The Special Master has reviewed each document in its entirety and, for the same reasons just addressed concerning Cigna's November 8 submission, recommends that the Court grant Cigna's Motion at this time. The manner in which these documents are used at trial may lead the Court to revisit the sealing question once trial has concluded.

### III. Conclusion

For the reasons described above, the Special Master recommends that the Court grant Anthem's Motion to Seal, Anthem's First Supplement to its Motion to Seal, Anthem's Second Supplement to its Motion to Seal, Cigna's Motion to Seal, and Cigna's Supplement to its Motion to Seal.

<u>November 20, 2016</u>
/s/ Hon. Richard A. Levie (Ret.)
Hon. Richard A. Levie (Ret.)
Special Master